**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| TERRY WADE HALE, | ) | CASE NO. 5:18-CV-02771-JZ |
| | ) | |
| Plaintiff, | ) | JUDGE JACK ZOUHARY |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN D.W. GRAY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.     Introduction

Petitioner, Terry Hale, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Hale is an Ohio prisoner who is currently serving a 9-year prison term for illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, aggravated possession of drugs, and one count of illegal use or possession of drug paraphernalia. Hale asserted a single ground for relief: that he was denied his right to effective assistance of counsel on his appeal in violation of the 6th & 14th Amendments of the U.S. Constitution. (ECF No. 1 at 5). Respondent, Warden David W. Gray, filed a return of writ on March 12, 2019. (ECF No. 5). Hale filed a traverse on May 13, 2019. (ECF No. 8, "Traverse"). Subsequently, the previous magistrate judge assigned to this matter allowed counsel for Hale to enter an appearance for the limited purpose of determining whether additional filings were necessary. On February 28, 2020, Hale, through counsel, supplemented his Traverse. (ECF No. 17, "Supplement"). In the Supplement, Hale argued that he had raised two grounds for relief: (1) that the trial court erred in denying his motion to suppress;

1

and (2) that he was deprived of effective assistance of counsel on his direct appeal. (ECF No. 17 at 10 (citing ECF No. 1 at 2)).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Hale's petition and other case-dispositive motions. Because Hale has presented only meritless or not cognizable claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.    Relevant Factual Background

The Ohio Court of Appeals for the Ninth Appellate District set forth the following facts[1] on direct appeal:

> {¶ 2} The National Precursor Log Exchange ("NPLEx") is an "electronic system for tracking sales of pseudoephedrine products and ephedrine products on a national basis * * *." R.C. 3715.05(A)(6). While monitoring the NPLEx live-time feed, a Brimfield police officer saw that Ms. Lisa Herczec had just purchased products containing pseudoephedrine from the Brimfield Walmart. The officer went to the store's parking lot and watched Ms. Herczec exit the store and join another man, later identified as R.S., by a vehicle that appeared to be broken down. Ms. Herczec's NPLEx purchase history showed that she had been purchasing a lot of pseudoephedrine and that she associated with Mr. Hale, who had prior methamphetamine-related activity. Mr. Hale also had an active warrant for his arrest.

> {¶ 3} Mr. Hale soon appeared at the broken-down vehicle. Another officer arrived and both officers approached the group together. They detained Mr. Hale on his outstanding warrant. Ms. Herczec initially told the officers that she bought the pseudoephedrine for her allergies, but later admitted that she bought it for Mr. Hale and said that he was manufacturing methamphetamine at his house in Akron. She provided the officers with Mr. Hale's address and they notified Akron police. The agency with the active warrant eventually

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999). Although Hale asserts that no evidence proved that the location of the meth lab was his "house" or "residence" (ECF No. 17 at 4), these are of no consequence here.

informed Brimfield police that it did not want to pick up Mr. Hale on the warrant, so all three individuals were released and they waited for a ride in the Walmart parking lot.

{¶ 4} Meanwhile, based on the information from Brimfield police, Akron police officers investigated and discovered an active methamphetamine lab at Mr. Hale's residence. Akron police then asked Brimfield police to arrest Mr. Hale and Ms. Herczec. Upon execution of a search warrant for the residence, officers discovered many items related to the manufacture of methamphetamine.

*State v. Hale*, No. 28334, 2017-Ohio-7048, ¶¶ 2-4 (9th Dist. Ohio Aug. 2, 2017).

## III.    Relevant State Procedural History

### A.    Indictment

Hale was indicted on June 2, 2015, for:

Count 1: illegal manufacture of methamphetamine in the vicinity of a school in violation of R.C. 2925.04(A), a felony of the first degree;

Count 2: illegal assembly or possession of chemicals for the manufacture of methamphetamine in the vicinity of a school in violation of R.C. 2925.041(A), a felony of the second degree;

Count 3: aggravated possession of methamphetamine in violation of R.C. 2925.11(A)(C)(1), a felony of the fifth degree; and

Count 4: illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a fourth-degree misdemeanor

(ECF No. 5-1, PageID #: 48-49). At arraignment, Hale plead not guilty to all charges. (ECF No. 5-1, PageID #: 50).

### B.    Motion to Suppress

On July 9, 2015, Hale filed a motion to suppress evidence. (ECF No. 5-1, PageID #: 51-52). Hale argued that his warrantless arrest was per se unreasonable. (ECF No. 5-1, PageID #: 52). Hale asked for leave to supplement the motion following discovery. (ECF No. 5-1, PageID #: 52). The trial court held a hearing on the motion to suppress on September 3, 2015 and October 8, 2015.

(ECF No. 5-1, PageID #: 54). During the hearing, Hale argued that the officers did not have reasonable suspicion to stop, detain and/or question him in the WalMart parking lot, did not have reasonable suspicion of criminal activity in relation to the 13th Street address in Akron, did not have permission to enter said property, did not have probable cause to search the property, and did not have probable cause to arrest him.

The trial court found that probable cause existed for the arrest and denied Hale's motion to suppress. (ECF No. 5-1, PageID #: 54-60).

### C.      Motion to Reconsider

On March 7, 2016, Hale moved the trial court to reconsider its decision on the motion to suppress the evidence found at the 13th Street location. (ECF No. 5-1, PageID #: 61-63). On reconsideration, Hale argued that the trial court improperly limited the issues of the previous motion to suppress by failing to address the legality of the reliance of a "bare bones" affidavit in support of the arrest warrant. (ECF No. 5-1, PageID #: 61). Hale further argued that he was denied a reasonably prompt determination of probable cause. (ECF No. 5-1, PageID #: 61). The record does not indicate a ruling on this motion for reconsideration, and neither Hale nor Respondent discuss the outcome.[2]

### D.      Trial and Sentencing

The case proceeded to jury trial on June 27, 2016. The jury returned a verdict finding Hale guilty as charged in the indictment. (ECF No. 5-1, PageID #: 66). On July 7, 2016, the trial court determined that Counts 1 and 2 merged for the purposes of sentencing. (ECF No. 5-1, PageID #: 67).  The State elected to proceed with Count 1. (ECF No. 5-1, PageID #: 67).  The trial court

---

[2] Considering Hale appealed the court's determination on his motion to suppress, the Court assumes that the motion for reconsideration was not successful.

imposed concurrent terms of nine years in prison on Count 1, one year in prison on Count 3, and 90 days in the Summit County Jail on Count 4. (ECF No. 5-1, PageID #: 67).

### E.  Direct Appeal

On appeal, Hale raised one assignment of error:

> The trial court erred as a matter of law in denying appellant's motion to suppress.

(ECF No. 5-1, PageID #: 76). Hale argued "that the Brimfield officers did not have reasonable suspicion, based on specific, articulable facts, that criminal activity was afoot to: (1) justify going to the Walmart parking lot to investigate Ms. Herczec's purchase of pseudoephedrine; (2) question Ms. Herczec or R.S. about the pseudoephedrine purchase; or (3) detain or Mirandize Ms. Herczec. *See Miranda v. Arizona*, 384 U.S. 436 (1966)." *State v. Hale*, 2017-Ohio-7048, ¶ 10.  Additionally, Hale argued "that the testimony of several officers at the suppression hearing indicated that they 'acted without any objective justification, and on nothing more than an 'inchoate suspicion' or a 'hunch' of criminal activity.'" *Id*. The Ninth District Court of Appeals declined to address the merits of Hale's issue on appeal finding that he had raised it for the first time on appeal. *Id*. at ¶ 11, 13. The appeals court also noted that the new arguments improperly concerned the constitutional rights of third parties. *Id*. at ¶ 12.

### F.  Application to Reopen

On October 29, 2017, Hale filed an application to reopen his appeal pursuant to App. R. 26(B)(7) asserting four assignments of error:

Assignment of Error I

> The trial court erred in failing to suppress evidence due to violations of state and federal constitutional protections. Suppression was a required remedy to end a systemic practice.

> Appellate counsel failed to assert preserved claims and instead argued issues on appeal found had [sic] not raised in the trial court which could not be argued on appeal. Reopening this appeal is necessary to prevent manifest injustice and to decide the preserved issues.

Assignment of Error II

> The trial court erred by failing to enforce discovery and by allowing inadmissible evidence violating rights to due process and confrontation. There is a reasonable probability that errors in admission affected the outcome of trial.

> Appellate counsel failed to assert preserved claims of failures of discovery and use of inadmissible evidence. Reopening this appeal is necessary to prevent manifest injustice to decide the preserved issues presented.

Assignment of Error III

> The trial court denied due process and equal protection by use of blanket policies refusing agreed plea bargain, revoking bond, and denying choice of counsel.

> Appellate counsel failed to assert preserved claims concerning those denials and failed to argue any error. Reopening this appeal is necessary to prevent manifest injustice to decide the preserved issues presented.

Assignment of Error IV

> The sentence is contrary to law. Appellate counsel failed to assert preserved claims concerning errors in sentencing. Opening this appeal is necessary to prevent manifest injustice to decide the preserved issues.

(ECF No. 5-1, PageID #: 110, 112, 113, 115).

On March 2, 2018, the appellate court found that Hale's appellate counsel's performance did not fall below an objective standard of reasonable representation by not raising these issues on direct appeal and denied Hale's application to reopen. (ECF No. 5-1, PageID #: 157).

### G.    Appeal to the Ohio Supreme Court

On April 15, 2018, Hale pro se appealed the denial of his motion to reopen his appeal to the Ohio Supreme Court. (ECF No. 5-1, PageID #: 158-159). Hale's memorandum in support of jurisdiction raised the following propositions of law:

> **Proposition of Law I:** Mr. Hale was deprived the effective assistance of counsel on his appeal as of right, as guaranteed by the Due Process Clause of the Fourteenth Amendment U.S. Constitution.
>
> **Proposition of Law II:** The Court of Appeal's adjudication of Mr. Hale's ineffective assistance of counsel claim involved an objectively unreasonable application of clearly established Federal Law.

(ECF No. 5-1, PageID #: 165, 166). On June 6, 2018, the Ohio Supreme Court declined jurisdiction. (ECF No. 5-1, PageID #: 174).

### H.    Motion for a New Trial

On July 14, 2016, Hale moved the trial court for a new trial. (ECF No. 5-1, PageID #: 175-178). Hale argued pursuant to Ohio Crim. R. 33(A)(1), (4), and (5) that a new trial was necessary based on the trial court's (1) failure to suppress evidence obtained during "unlawful arrest and seizure[;]" (2) revocation of his bond for arriving late to the start of trial; (3) allowance of repeated discovery violations by the State; (4) admission of hearsay testimony from a Brimfield police officer; (5) failure to properly charge the jury; (6) imposition of sentences contrary to law; (7) denial of his equal protection rights by refusing to pay for transcripts needed by appointed counsel; (8) denial of Hale's choice of appellate counsel; and (9) combined cumulative errors created an environment where defendant faced a prosecutor at counsel table as well as "on the bench." (ECF No. 5-1, PageID #: 175-178). On June 7, 2018, the trial court denied Hale's motion for new trial. (ECF No. 5-1, PageID #: 180).

On July 7, 2018, Hale, through counsel, filed a timely notice of appeal to the Ninth District Court of Appeals, Summit County, Ohio. (ECF No. 5-1, PageID #: 187). In his merit brief, Hale raised the following assignment of error:

> 1. The trial court abused its discretion when it denied Appellants [sic] motion for a new trial as its ruling prevented the defendant from having a fair trial.
>
> 2. Appellant's due process right to legal counsel was prejudiced by the ineffective assistance of prior Appellant counsel.
>
> 3. The trial court denied due process and equal protection by use of blanket policies refusing agreed plea bargain, revoking bond, and denying choice of counsel.

(ECF No. 5-1, PageID #: 200). On August 28, 2019, the Ninth District Court of Appeals overruled each of Hale's assignments of error and affirmed the trial court's judgment. (ECF No. 16, PageID #: 1352). Hale then moved for reconsideration, which the appellate court denied. (ECF No. 16, PageID #: 1357).  Hale appealed to the Supreme Court of Ohio asserting three propositions of law:

> 1. Denial of a motion to suppress is appropriate for consideration upon timely motion for new trial filed prior to appeal.
>
>    When an accused is arrested without a warrant and held based upon "bare bones" complaints absent any finding of probable cause for a warrant for continued detention being made forthwith after arrest, suppression of evidence is appropriate.
>
> 2. The issue of vicinity of a school presents an issue that imposes strict liability and severe sentencing impact. When the defense has timely requested discovery and a bill of particulars, evidence of school ownership of premises by an auditor's tax bill first disclosed the second day of trial and measurements first taken by police officers during the lunch hour of the third day of trial are not fairly admissible over timely objection.
>
> 3. The decision to accept a proposed agreed plea bargain is generally subject to the   exercise of sound discretion.  When a trial court accepts all bargained terms but rejects an agreed element of bond pending appeal based on the court's clearly erroneous belief that the defendant, a resident of New

8

> Philadelphia, Ohio, "lives out of state" that rejection lacks any
> sound reasoning process and constitutes an abuse of sound
> discretion.

(ECF No. 16, PageID #: 1361). The Supreme Court of Ohio declined jurisdiction on February 6,

2020. (ECF No. 16, PageID #: 1373).

## IV.    Federal Habeas Corpus Petition

On November 1, 2018, Hale petitioned pro se that this Court issue a writ of habeas corpus.

(ECF No. 1). Hale asserted the following ground for relief:

> **Ground One:** Petitioner is being held in violation of the
> Constitution for the reason that he has been denied his right to
> effective assistance of counsel on his appeal as of right. In violation
> of the 6th & 14th Amendments of the U.S. Constitution.
>
> **Supporting Facts:** The Court of Appeals adjudication of petitioners
> [sic] claim of ineffective assistance of counsel on appeal involved
> an unreasonable application of clearly established Federal law. In
> violation of 2254d(1)
>
> The record reveals that counsel raised issue [sic] not preserved for
> appeal and concerning another parties [sic] constitutional rights. The
> Court of Appeals denied his appeal for these very reasons. But the
> same Court of Appeals then determined counsel was not ineffective
> for doing so.

(ECF No. 1 at 5).

## V.    Legal Standards

### A.    Jurisdiction

28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas

corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner

may file a § 2254 petition in the "district court for the district wherein such person is in custody or

in the district court for the district within which the State court was held which convicted and

sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Summit County sentenced

Hale, and Summit County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Hale's § 2254 petition.

### B.    Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law … are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th 1998).

### C.    AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

10

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

11

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## VI.    Discussion

### A.    Ineffective Assistance of Appellate Counsel

In Ground One, Hale argues that he was "denied his right to effective assistance of counsel on his appeal as of right. In violation of the 6th & 14th Amendments of the U.S. Constitution." (ECF No. 1 at 5).[3] He supports this argument by noting that the Ohio Court of Appeals first denied him relief on direct appeal noting that his counsel had raised only issues not preserved for appeal and concerning the constitutional rights of third parties, then denied him the ability to reopen his appeal asserting that his counsel had not been ineffective for doing so. (ECF No. 1 at 5). There are no issues regarding the timeliness or exhaustion of this ground for relief. (*See* ECF No. 5).

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See, e.g., Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986). In *Strickland*, the Court explained the test for determining the effectiveness of counsel:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

---

[3] The Supplement briefly addresses this ground for relief but identifies it as Ground Two. The Court addresses both Ground One of the Traverse and Ground Two of the Supplement here.

466 U.S. at 687. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. *Ohio v. Hamblin*, 37 Ohio St.3d 153 (1988).

Petitioner raised this issue to the appellate court in his application to reopen his appeal. The state court's reasonable rejection of this issue is entitled to AEDPA deference. 28 U.S.C. §2254(d)(1). *Harrington*, 562 U.S. at 103.

A habeas court "assess[es] the strength of the claim appellate counsel failed to raise." *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002)); *see also McMeans v. Brigano,* 228 F.3d 674, 682 (6th Cir. 2000). "If there is a reasonable probability that [the defendant] would have prevailed on appeal had the claim been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *McFarland*, 356 F.3d at 700. Thus, a claim appellate counsel could have, but did not, raise cannot form the basis of an ineffective assistance of counsel claim unless the claim had a reasonable probability of success at the time it could have been raised to have changed the result of the appeal. *Id*. at 699-700. Appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Moore v. Mitchell,* 708 F.3d 760, 776 (6th Cir. 2013) (citing *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008)); *Greer*, 264 F.3d at 676.

Ground 1 does not actually allege an issue that Hale's appellate counsel was ineffective for failing to raise. (*See* ECF No. 1 at 5).  Nonetheless, it appears based on Hale's Traverse that his argument is that he received ineffective assistance of counsel because his appellate counsel failed

to raise the assignments of error set forth in the application to reopen his appeal. (ECF No. 8 at 10-13). The highly deferential AEDPA standard applies to these claims that the Ohio Court of Appeals reviewed on the merits in denying Hale's App. R. 26(B) application. 28 U.S.C. § 2254(d). Applying *Strickland* analysis, the court found "that appellate counsel's failure to raise these additional arguments did not cause counsel's performance to fall below an objective standard of reasonable representation.  Mr. Hale has not met his burden of establishing that there is a genuine issue as to whether he has a colorable claim of ineffective assistance of counsel and has not shown that: (1) appellate counsel was deficient for failing to raise the issues that he now presents, or (2) there was a reasonable probability of success had counsel presented those claims on appeal." (ECF No. 5, PageID #: 157). Hale has not shown that the Ohio Court of Appeals' decision unreasonably applied Supreme Court precedent or made an unreasonable determination of the facts. 28 U.S.C. § 2254(d). And, as explained below, the Ohio Court of Appeals reasonably determined that Hale could not show that appellate counsel was ineffective for failing to the issues on direct appeal.[4]

### 1.    Warrantless Arrest as the Basis for Suppression of Evidence

Hale claims that his appellate counsel was ineffective for failing to raise the argument that the trial court erred by not finding that the search warrant was "fruit of a poisonous tree" since it was based on facts obtained by a warrantless arrest. The record demonstrates, however, that the search warrant was obtained independently from Hale's arrest. Thus, this issue has no merit.

Hale first raised this issue with the trial court in his motion to suppress. (ECF No. 5-1, PageID #: 52). The trial court held a hearing on the motion. (ECF No. 7, PageID #: 290-439). At the hearing, Hale referenced *Ohio v. Heston* and argued that a warrantless arrest is only valid

---

[4] The Ohio Court of Appeals additionally addressed Hale's claim that his appellate counsel was ineffective in its denial of his motion to reopen the appeal. (ECF No. 5-1, PageID #: 155-157).

"where the arresting officer has probable cause to believe that a felony was committed by [the] defendant and the circumstances are such as to make it impracticable to secure a warrant." *Ohio v. Heston*, 29 Ohio St.2d 152 (1972), at paragraph two of the syllabus. Hale argued that since the police had time to secure a search warrant for the house, they should have also secured an arrest warrant for him, and that the State subsequently failed to show that it was impracticable to obtain an arrest warrant.

The trial court made the following findings of fact:

> The incident(s) in question arose on or about May 18, 2015. The testimony elicited at the hearing indicated that on May 18, 2015 Officer Paul Gramlich was on duty as a patrol officer with the Brimfield Township Police department. Patrolman Gramlich testified that he has four and half years of law enforcement experience:  two and a half  with Brimfield Township and prior to that, two years with the Cuyahoga Falls Police Department.  All of his training and certifications are up to date.  Patrolman Gramlich is also a canine handler with Brimfield  Township.

> Gramlich testified that while he was on duty and on patrol, he began monitoring the NPLEX system through his cruiser's laptop computer, which shows a live time feed of all pseudoephedrine purchased from the Brimfield WalMart pharmacy. Gramlich testified that he observed that someone named Lisa Herczec had purchased some pseudoephedrine, so he pulled in to the WalMart parking lot and attempted to see if he could locate her.  He further checked her state ID number, and pulled up a picture of her from the BMV.  The site indicated that her license was suspended. Gramlich observed Lisa exit the store from the main entrance.  She crossed in front of the police cruiser and encountered a male who was later identified as Robert Swan. Swan then directed her to a car parked over by the lawn and garden entrance to the store.  They went to the car, then got out of the car and opened the hood.  It appeared to Gramlich that they were experiencing car trouble.

> While still observing the two individuals, Gramlich then pulled up more information about Herczec on the NPLEX system which showed that she had frequently purchased pseudoephedrine. Herczec's name was also linked in the system with Terry Hale. After checking on Terry Hale, Gramlich discovered that Hale had

previous methamphetamine- related activity, and currently had a warrant for his arrest from another jurisdiction.

After continuing to observe the situation, a person who Patrolman Gramlich believed to be Terry Hale showed up at the vehicle.  Hale was detained for his warrant, and Swan and Herczec were identified. Swan indicated that he was on probation for a methamphetamine case in which Hale  had been his co-defendant. While checking on the status of Hale's warrant, Officer Kelly Ryba interviewed Herczec. When Herczec initially spoke with Patrolman Gramlich she denied any involvement with methamphetamine, but when she subsequently spoke with Ryba she admitted to buying the pseudoephedrine for Hale, her brother, who was currently cooking meth at his home in Akron.  Herczec gave Ryba the address of 1937 13th Street as the location of the meth lab. Ryba relayed this information to Gramlich who then contacted Officer David "Chris" Crockett of the Akron Police department in order to have the Akron Police investigate the alleged meth house.  Patrolman Gramlich then confiscated the purchased box of pseudoephedrine, advised Hale and   Herczec that he would continue to investigate the matter and consult with the prosecutor, and once he determined that the agency that had issued the warrant for Hale would not pick him up, released them.

Officer Crockett testified that he received a call from Patrolman Gramlich late in the evening of May 18, 2015 referencing a possible meth house with active cooking at 1937 13th Street in Kenmore, a part of Akron.  Officer Crockett, who was off-duty at the time, called an on-duty Akron Police officer, Officer Curtin, and asked him to approach the house in question to investigate whether meth was actively being cooked there.  Officer Crockett then received a call back from Curtin and was informed that he had found an active meth lab at the address in question. Crockett then headed out to the address to help in the clean up of the site. Crockett also called Gramlich back and asked him to detain the individuals involved and transport  them to a location in Akron so that APD could take custody of them in a paddy wagon as they were going to be arrested in relation to the active meth lab. Gramlich and Ryba did so.

Officer Brian Curtin testified that he was contacted by Officer Crockett to investigate the house on 13th Street. Curtin and another officer, Officer Culvert, approached the house and spoke with the occupant, Tracie McKeown, a co-defendant in this matter. Tracie let them in and Officer Curtin noticed a chemical haze in the air. He asked if there was anyone else in the house and she said no, but she allowed him to look. After he rounded the corner he saw in a half-

17

open closet a spent reaction vessel, some plastic tubing and coffee filters. The officers then exited the house with Ms. Keown. Officer Curtin is trained in the recognition and disposal of clandestine laboratories, and testified that because of his concern that there was an active meth lab in the house, he removed everyone from the house for their safety. He notified his sergeant asking for the other clandestine lab team members to be assembled.  He then called back Officer Crockett and told him what he had found.  Officer Lemonier then showed up and Curtin and Lemonier then re-entered the house and did a protective sweep not only for active bottles but also to see if there were any more people inside the house hiding. An active bottle was located and was brought outside to be safely dealt with. The house was then secured and a search warrant was requested and obtained. Officer Crockett then came out to the house along with other members of the clandestine lab team. After the search warrant was signed, the team conducted a search of the house. Numerous items related to the possession and manufacture methamphetamine were found inside the home. Both Defendants as well as Ms. McKeown were charged with multiple felony offenses, indicted, and arraigned June 3, 2015, at which time they entered pleas of Not Guilty. Ms. McKeown did not join into the Motion to Suppress.

(ECF No. 5-1, PageID #: 55-58).

A motion to suppress evidence presents a mixed question of law and fact. *Ohio v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*. (citing *Ohio v. Mills*, 62 Ohio St.3d 357, 366 (1992)). Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* at ¶ 8. The reviewing court must then "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*.

Accepting the trial court's findings of fact, it is clear the information used to obtain the search warrant was not based on Hale's warrantless arrest.[5] Herczec admitted she had purchased the pseudoephedrine in order to cook methamphetamine with Hale at 1937 13th Street in Kenmore. Officer Curtin then went to the address provided by Herczec to investigate a possible methamphetamine cookhouse. Upon arriving at the house, Officer Curtin was let in by an occupant who consented to law enforcement's entrance into the house. After a brief observation period, Officer Curtin, who was trained in recognition and disposal of clandestine laboratories, identified a spent reaction vessel, some plastic tubing and coffee filters, and an active cook bottle in plain view. Based on the Officer Curtin's observations, a search warrant was obtained to perform a search of the house. Accordingly, probable cause existed to obtain a search warrant of the house that was independent from Hale's warrantless arrest. Hale has failed to demonstrate how his warrantless arrest had any impact on obtaining the search warrant, and the record belies this suggestion.

Because Hale has not demonstrated a reasonable likelihood of success on this claim, his appellate counsel was not ineffective for failing to raise it. *Moore*, 708 F.3d at 776 (citing *Davie*, 547 F.3d at 312); *Greer*, 264 F.3d at 676.

        2.        Evidentiary and Discovery Violations

---

[5] Hale agrees that "the findings are mostly correct as far as they go, but they are incomplete." (ECF No. 13 at 3). But Hale takes issue with the court referring to the house at 1937 13th Street in Kenmore as his house or residence. (ECF No. 13 at 3). Hale also asserts that the court erred by finding that the NPLEx showed Herczec had pseudoephedrine purchase history and that Hale had prior methamphetamine-related activity. (ECF No. 13 at 3). None of these findings change the outcome herein, thus the Court will not analyze whether Hale has demonstrated these findings are not supported by competent, credible evidence.

Hale asserted that his appellate counsel was ineffective for failing to raise an issue on direct appeal challenging the admission of certain evidence against him as well as discovery violations. (ECF No. 5-1, PageID #: 112). Specifically, Hale argued that evidentiary and discovery violations included: the State failing to disclose the location of "Robert Swan" who had been with Herczec and Hale at the Brimfield Walmart on the day they were arrested; allowing the testimony of codefendant Herczec whose proffered testimony was not disclosed until two business days before trial; the use of hearsay evidence regarding NPLEx records instead of requiring the records be produced under the "best evidence" rule; conflicting statements of State's witness Officer Crocket; and lack of evidence supporting the element that the drug lab was located in the vicinity of a school. (ECF No. 5-1, PageID #: 112-113). Ohio Crim. R. 52(A) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *See also* O.R.C. 2945.83(C) ("No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of * * * [t]he admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby."); *Ohio v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 24 ("Not every error requires that a conviction be vacated or a new trial granted."). In order to prejudice a defendant, i.e., to "affect" a defendant's "substantial rights" under Ohio Crim. R. 52(A), the error " 'must have affected the outcome of the [trial] court proceedings.' " *Ohio v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, ¶ 7, quoting *United States v. Olano*, 507 U.S. 725, 734 (1993). Although Hale made several assertions of error, he neither supported them with any further argument nor demonstrated how the alleged errors affected his substantial rights. (ECF No. 5-1, PageID # 112-113). Accordingly, Hale failed to establish prejudice under Ohio Crim. R. 52. Additionally, these issues also fail upon further review.

20

The Court finds no prejudice in the trial court's handling of the discovery matters. The trial court granted a continuance of the suppression hearing in order for the defense team to attempt to locate Mr. Swan (ECF No. 7, PageID #: 294-296, 419-422) and authorized a continuance of the trial to allow Hale to review and analyze the proffered statement of his co-defendant Herczec, which he declined (ECF No. 7, PageID #: 462). Hale provides no further support for these errors.

The trial court did not abuse its discretion in allowing the officer to testify about the NPLEx system and how he used it to further his investigation. Generally, decisions concerning the admission of evidence are within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion and proof of material prejudice. *Ohio v. McKelton*, 2016-Ohio-5735, ¶ 181, 148 Ohio St. 3d 261, 293, 70 N.E.3d 508, 556 (citing *Ohio v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 116.). "A trial court abuses its discretion when its decision is arbitrary, unreasonable, or unconscionable." *Ohio v. Robinson*, 2015-Ohio-4262, ¶ 7 (9th App. Dist. 2015) (citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When applying the abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court." *Id*. (citing *Pons v. Ohio State Med. Bd*., 66 Ohio St.3d 619, 621 (1993)). When Officer Gramlich began testifying about what he learned from NPLEx, counsel for Hale objected on the basis of hearsay and best evidence. The trial court overruled the objection on the basis that the testimony was not hearsay because it was not being offered for the truth of the matter asserted, but rather for the effect it had on Officer Gramlich and, also, because it was being offered as background information. (*See* ECF No. 7, PageID #: 571-578). The court agrees. Officer Gramlich testified about how what he learned from the NPLEx records caused him to approach and further investigate Herczec and Hale following Herczec's purchase of pseudoephedrine. This was not offered for the truth of the records, but for background as to why officers questioned Herczec and

Hale and, also, how the information Officer Gramlich learned from NPLEx assisted in his investigation. This is not hearsay. Moreover, the "best evidence" rule does not apply as the State was not introducing the testimony to provide the contents of the records, but the effect that they had on Officer Gramlich in his investigation.[6] Accordingly, the trial court did not abuse its discretion in allowing Officer Gramlich's testimony.

Hale has not established any error regarding the statements of Officer Crocket. In his motion to re-open the appeal, Hale stated "Officer Crocket said at suppression that he had no knowledge of 1937 13th St.  But during his proffer interview of Herczec asked her if she called earlier regarding Mr. Hale's activities at that location. Affidavit, Exh. P, p 2-3." (ECF No. 5-1, PageID #113). Hale provides no further argument. Presumably, Hale is attempting to argue that Officer Crocket had some credibility issues regarding these allegedly conflicting statements, but Hale failed to identify an error here with any specificity.[7]

Finally, Hale argued there was no "properly admissible evidence that any school boundary was within 1000 feet" of the drug lab. (*See* ECF No. 5-1, PageID #: 116). Hale takes issue that "[n]o evidence as to the school was provided prior to trial" and that the "certified tax bill…does not prove distance." (ECF No. 5-1, PageID #: 116).

As it relates to a discovery violation, the trial court heard argument regarding the late produced evidence of the tax bill as evidence of a school's ownership of the property behind Hale's house. (ECF No. 7, PageID #: 462-465). Prior to trial, Hale moved to "exclude any evidence of

---

[6] Ohio Evid. R. 1002 requires the "original writing, recording, or photograph" to prove its content.

[7] The Court notes that the officer's two statements are not inherently contradictory. Officer Crocket's statement could easily be interpreted that he had no personal knowledge of the residence and its alleged drug activity.

this being within a thousand feet of a school" due to late provided discovery. (ECF No. 7, PageID #: 465). The trial court properly inquired as to the circumstances surrounding the failure to timely produce the tax record and determined exclusion of the evidence was not warranted. (ECF No. 7, PageID #: 454-455, 463-465). *See Ohio v. Darmond*, 2013-Ohio-966, ¶ 21, 135 Ohio St. 3d 343, 348, 986 N.E.2d 971, 976 ("a trial court must inquire into the circumstances surrounding a discovery violation, must balance the competing interests, and 'must impose the least severe sanction that is consistent with the purpose of the rules of discovery.'"). The trial court denied the motion but reminded counsel of his right to object when the evidence is brought up at trial and to move for a Rule 29 acquittal. (ECF No. 7, PageID #: 465). The Court finds no abuse of discretion. Because the Court finds no error, his appellate counsel was not deficient, and Hale cannot demonstrate prejudice. Accordingly, Hale's appellate counsel was not ineffective for failing to raise this issue on direct appeal.

To the extent Hale's argument is that the trial court erroneously allowed evidence of ownership of the property and the distance of the school owned property from the meth lab, these are evidentiary issues subject to review for abuse of discretion. *McKelton*, 148 Ohio St. 3d at 293. Hale first questioned a witness on cross, Officer Lemonier, about the property tax record. (ECF No. 7, PageID #: 859-861). On redirect, the State introduced Exhibit 68, a certified copy of the tax record for parcel number 6708954 through Officer Lemonier. (ECF No. 7, PageID #: 887-889). The officer testified that the record indicated that the parcel was owned by the Akron Board of Education and included areas for recreation and health. (ECF No. 7, PageID #: 887-889). Hale later objected to the admission of Exhibit 68 as the "best evidence" of proof of ownership of the football field behind Hale's house and specifically stated that he was not making a weight of the evidence argument. (ECF No. 7, PageID #: 908-909). Hale's reliance on the "best evidence rule"

23

is misplaced. Ohio Evid. R. 1002, known as the "best evidence rule," requires the "original writing, recording, or photograph" to prove its content. A certified copy may be used when the document is an official record. Ohio Evid. R. 1005. There is no dispute that the tax record admitted as Exhibit 68 was a certified copy of an official tax record. Accordingly, the trial court did not abuse its discretion in allowing the admission of the exhibit. Hale argued multiple times while cross examining witnesses that the best way to prove ownership was through a deed. However, that is an argument regarding weight, not admissibility. *See O'Brien v. Ed Donnelly Enter., Inc*., 575 F.3d 567, 584 (6th Cir. 2009) (internal quotations omitted), overruled on other grounds by *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), (citing *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir.1994) ("there is no general rule that proof of a fact will be excluded unless its proponent furnishes the best evidence in his power")).

The State introduced evidence of the distance between the meth lab and school property through Officer Nemeth. Officer Nemeth testified that the football field behind Hale's house was the Kenmore High School football field (ECF No. 14, PageID #: 1243) and that the distance between the football field and Hale's property was 156 feet and one-half inch (ECF No. 14, PageID #: 1244-1247). Hale did not contemporaneously object to Officer Nemeth's testimony regarding the distance between the football field and Hale's property. Accordingly, any issue regarding the admission of this testimony was not properly preserved for appeal.

To the extent Hale argues that there was insufficient evidence to prove the crime was committed within 1000 feet of a school, this issue lacks merit. "An argument that the State failed to prove one of the elements of a crime is one sounding in sufficiency, not weight." *Ohio v. Vincente–Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, 2010 WL 5276993, ¶ 20 (citations and internal quotation marks omitted).  "A sufficiency challenge of a criminal conviction

presents a question of law, which we review de novo." *Id*. at ¶ 7 (quoting *Ohio v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, 2017 WL 192648, ¶ 6, citing *Ohio v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997)). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *Id*. (quoting *Ohio v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, 2016 WL 4141159, ¶ 25, citing *Thompkins* at 386, 678 N.E.2d 541). " 'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id*. (citations omitted). The reviewing court does "not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *Id*. (quoting *Ohio v. Hall*, 2017-Ohio-73, 80 N.E.3d 1163, ¶ 10.

Hale was convicted of illegal manufacture of methamphetamine in the vicinity of a school in violation of R.C. 2925.04(A). For the purpose of O.R.C. 2925.04, "[a]n offense is 'committed in the vicinity of a school' if the offender commits the offense … within one thousand feet of the boundaries of any school premises, regardless of whether the offender knows the offense is being committed … within one thousand feet of the boundaries of any school premises." O.R.C. § 2925.01(P). "School premises" means either of the following:

> (1) The parcel of real property on which any school is situated, whether or not any instruction, extracurricular activities, or training provided by the school is being conducted on the premises at the time a criminal offense is committed;

> (2) Any other parcel of real property that is owned or leased by a board of education of a school, the governing authority of a community school established under Chapter 3314. of the Revised Code, or the governing body of a nonpublic school for which the state board of education prescribes minimum standards under section 3301.07 of the Revised Code and on which some of the instruction, extracurricular activities, or training of the school is

25

> conducted, whether or not any instruction, extracurricular activities,
> or training provided by the school is being conducted on the parcel
> of real property at the time a criminal offense is committed.

O.R.C. § 2925.01(R).

Hale argued there was "failure of proof of the element of vicinity of [a] school[.]" (ECF No. 5-1 PageID #: 113). However, the record demonstrates otherwise. Officer Crockett testified that the football field behind the meth lab was owned by Akron Board of Education. (ECF No. 7, PageID #: 751). Officer Lemonier also testified that the football field behind the property was owned by the Akron Board of Education. (ECF No. 7, PageID #: 832). Additionally, the State introduced evidence by way of a tax record showing that Akron Board of Education owned the property. Finally, the State introduced evidence of the distance between the location of the meth lab and the school property as being 156 feet. Accordingly, when viewed in the light most favorable to the government, sufficient evidence supports the conviction.

Because Hale has not demonstrated a reasonable likelihood of success on any of these claims, his appellate counsel was not ineffective for failing to raise them. *Moore*, 708 F.3d at 776 (citing *Davie*, 547 F.3d at 312); *Greer*, 264 F.3d at 676.

### 3. Trial court's refusal to accept agreed plea, revocation of bond, and denial of choice of counsel.

In the third issue raised in Hale's motion to reopen his appeal, Hale asserted that his appellate counsel was ineffective for failing to raise an issue on direct appeal that the trial court erred by employing blanket policies regarding not granting bond pending appeals, by revoking his bond for being late for first day of trial, and by denying his choice of counsel in violation of *Ohio v. Dotson*, 2017-Ohio-918, ¶ 10 (Ohio App. 5th Dist. Mar. 15, 2017). The Ninth District Court of Appeals reviewed the merits of these claims in Hale's appeal of the trial court's denial of a new trial and determined that the trial court did not abuse its discretion in declining to grant Hale a

bond pending appeal in this matter nor in revoking Hale's bond, and did not error in appointing a new attorney on appeal. *State v. Hale*, 2019-Ohio-3466, ¶¶ 12-15, *appeal not allowed*, 2020-Ohio-122, ¶¶ 12-15, 157 Ohio St. 3d 1540, 137 N.E.3d 1198.

First, Hale's argument that the trial court erroneously rejected his plea agreement, which included a condition that Hale be let out on bond pending appeal is without merit. "[T]he granting of bail is strictly within the discretion of the courts [and t]here is no bail on appeal as a matter of right." *Coleman v. McGettrick*, 2 Ohio St. 2d 177, 179 (1965); *see also* O.R.C. 2949.02(A). Although "several Ohio courts have determined that a trial court abuses its discretion when it rejects a plea agreement by relying on a blanket policy rather than considering the facts and circumstances of the particular case" (*see, e.g., State v. Boswell*, 6th Dist. Erie No. E-18-053, 2019-Ohio-2949, ¶ 51), no such blanket policy was applied here. Instead, Hale himself rejected the plea offer after hearing that the trial court was not inclined to grant bond pending appeal. *See Hale*, 2019-Ohio-3466, ¶ 13. Moreover, Hale did not establish that the trial court maintained a blanket policy against granting bonds pending appeal in all cases.

Second, Hale's argument that the trial court committed reversible error by revoking his bond for arriving late to trial is likewise meritless. "The sole purpose of bail is to ensure a person's attendance in court." *State ex rel. Sylvester v. Neal*, 2014-Ohio-2926, 140 Ohio St. 3d 47, ¶ 16); *see also* O.R.C. 2937.22(A) (stating that bail is security for the appearance of an accused to appear). "Any person who fails to appear before any court as required is subject to the punishment provided by the law * * *." Ohio Crim. R. 46(I). Here, the trial court revoked Hale's bond after he appeared late for the first day of trial due to car troubles. Revocation of bond is an authorized punishment for a criminal defendant who fails to timely appear to his court appearance. Accordingly, the trial court acted within its discretion in revoking Hale's bond.

27

Finally, Hale's argument that he was denied his choice of appellate attorney is meritless. Hale was represented at trial and on direct appeal by court appointed counsel. There is no right to a choice of appointed counsel and a defendant must demonstrate "good cause" for a change of counsel. *Ohio v. Cowans* (1999), 87 Ohio St.3d 68, 72 (quoting *United States v. Iles* (6th Cir. 1990), 906 F.2d 1122, 1130). Hale has not argued "good cause" for the substitution of counsel. Moreover, Hale did not object to the appointment of new counsel for the purpose of appeal nor did he move for substitution of appellate counsel. (*See* ECF No. 7, PageID #: 1029-1030).

Because Hale has not demonstrated a reasonable likelihood of success on any of these claims, his appellate counsel was not ineffective for failing to raise them. *Moore*, 708 F.3d at 776 (citing *Davie*, 547 F.3d at 312); *Greer*, 264 F.3d at 676.

4.      Alleged Sentencing Errors.

Finally, in his Ohio App. R. 26(B) application to reopen his appeal Hale asserted that his appellate counsel was ineffective for failing to challenge errors in his sentencing. Hale argued the trial court: failed to merge all counts for the purpose of sentencing; erroneously applied the vicinity of a school element; and did not have "proper evidence" of a prior conviction.  The Ohio Court of Appeals reasonably determined that Hale could not show that appellate counsel was ineffective for failing to challenge the alleged errors in his sentencing, because 1) the  trial court reasonably determined that Counts 1, 3, and 4 were not allied offenses as they could have been charged and proven separate from one another and had differing elements[8] (ECF No. 7, PageID #: 1018-1020) (*see Ohio v. Ruff*, 2015-Ohio-995, ¶ 25, 143 Ohio St. 3d 114, 121, 34 N.E.3d 892, 898 ("If any of

---

[8] The court found Count 1 (illegal manufacture of methamphetamine) and Count 2 (illegal assembly or possession of chemicals for the manufacture of methamphetamine) merged for sentencing.

the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.")); 2) as discussed above, the State introduced evidence that the crime was committed within the vicinity of a school; and 3) the trial court sentenced Hale to nine years, which is two years less than the State requested and within the range authorized by statute, after reviewing the pre-sentence investigation report, which outlined Hale's prior convictions, and after Hale admitted to several prior convictions (ECF No. 7, PageID #: 1022-1023).

Because Hale has not demonstrated a reasonable likelihood of success on any of these claims, his appellate counsel was not ineffective for failing to raise them. *Moore*, 708 F.3d at 776 (citing *Davie*, 547 F.3d at 312); *Greer*, 264 F.3d at 676.

### B.  Fourth Amendment

In the Supplement filed by counsel, Hale argues that his petition also included a ground for relief of the underlying issue that "police officers violated his Fourth Amendment rights at the time of his arrest because this was a warrantless arrest made based on a 'bare-bones' complaint, absent any reasonably prompt determination of probable cause for continued detention." (ECF No. 17 at 13). Hale claims that this issue was preserved through his appeals of a denial of the motion for a new trial. (ECF No. 17 at 15). Despite Hale's counsel's attempt to shoehorn in an additional ground for relief, Hale did not raise this issue in his petition. (*See* ECF No. 1). Nonetheless, in an abundance of caution, the Court addresses it here.

Hale concedes that Fourth Amendment claims are usually barred from habeas review, yet he insists that that axiom does not render *his* argument non-cognizable. (ECF No. 17 at 13).

The Court finds that Hale has not presented a cognizable Fourth Amendment argument. In considering a Fourth Amendment claim on habeas review, a district court must "make two distinct inquiries… [First,] whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim…. Second, … whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted). If a petitioner cannot demonstrate both elements, then his Fourth Amendment claim is non-cognizable. *Id.* Hale concedes that Ohio has a procedural mechanism which presents an adequate opportunity to raise his Fourth Amendment claim; thus, he must establish that a failure of that procedural mechanism somehow prevented him from litigating his claims.

Hale fails to demonstrate that the procedural mechanism was frustrated. There are two ways to view Hale's alleged issue: 1) that Hale asserts that evidence from the execution of the search warrant must be suppressed as the warrant was based on information gathered during his warrantless arrest; or 2) that Hale asserts error in his continued detention absent a probable cause hearing.

First, as explained above, following a hearing on Hale's motion to suppress evidence seized during the execution of the search warrant, the trial court determined that probable cause existed to obtain the search warrant based off the information obtained from Herczac in the WalMart parking lot as well as Officer Curtin's discovery of suspicious items in plain view upon his lawful entry into the alleged cookhouse. The record demonstrates that Hale's warrantless arrest had nothing to do with obtaining the search warrant. Accordingly, Hale raised the suppression issue using the state procedural mechanism – i.e., a motion to suppress evidence. The record reflects that Hale was able to present his Fourth Amendment claims to the Ohio courts and that these claims

were carefully considered and rejected at the trial level and on appeal. Hale may be disappointed with his inability to persuade the Ohio courts that the evidence obtained in the execution of the search warrant was the product of an illegal arrest, but the record clearly shows that Hale received all the process he was due. Accordingly, this claim is not cognizable on habeas review. *See Harding v. Russell*, 156 F. App'x 740, 745 (6th Cir. 2005).

Second, assuming arguendo that Hale's initial detention without a probable cause finding creates some form of a cognizable constitutional issue, it is clear that any claim he raises in that respect is moot. *See Ohio v. Washington*, 30 Ohio App.3d 98, 99, 506 N.E.2d 1203 (Ohio App. 8th Dist. 1986) (finding that subsequent indictment of the defendant by a grand jury renders any defects in the preliminary hearing moot). As such, there is no relief this Court could afford Hale for his alleged unlawful detention.

## VII.    Certificate of Appealability

### A.    Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

31

### B.    Analysis

Hale's grounds for relief are meritless or not cognizable. If the Court accepts the foregoing recommendation, then Hale has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## VIII.   Recommendation

Hale's petition asserts only meritless and not cognizable claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: September 30, 2021

_____s/Carmen E. Henderson_____
Carmen E. Henderson
United States Magistrate Judge

_____

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).